IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| GLENN F. | : |
| v. | : NO. 22-CV-1996 |
| MARTIN O'MALLEY, Commissioner of Social Security | : |

**O P I N I O N**

SCOTT W. REID  
UNITED STATES MAGISTRATE JUDGE

DATE: November 6, 2024

     Glenn F. brought this action under 42 U.S.C. 5405(g) to obtain review of the decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). He has filed a Request for Review to which the Commissioner has responded. As explained below, I conclude that the Request for Review should be denied and judgment entered in favor of the Commissioner.

1.    *Factual and Procedural Background*

     Glenn F. was born on January 1, 1965. Record at 216. He obtained a GED. Record at 279. He worked in the past in maintenance at a junk yard, as a cable technician, and as a welder. Id. On October 21, 2016, Glenn F. filed an application for DIB. Record at Record at 216. In it, he asserted disability beginning on June 4, 2016, as a result of pain in his right shoulder, status post-surgery on the right shoulder, right elbow fracture, torn left meniscus, right knee pain, posttraumatic stress disorder ("PTSD"), depression, and anxiety. Record at 216, 278. He later applied for SSI. Record at 108.

Glenn F.'s applications for benefits were denied on January 6, 2017. Record at 107, 108. On January 25, 2017, Glenn F. filed a request for a hearing before an Administrative Law Judge ("ALJ"). Record at 136.

A hearing was held in this matter on August 9, 2018. Record at 46. On November 30, 2018, however, the ALJ issued a written decision denying benefits. Record at 19. The Appeals Council denied Glenn F. 's request for review on January 10, 2020, permitting the ALJ's decision to serve as the final decision of the Commissioner. Record at 6. Glenn F. then filed this action.

II.     *Legal Standards*

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. {405(g); *Richardson v. Perales*, 402 U.s. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence which a reasonable mind might deem adequate to support a decision. *Richardson v. Perales*, supra, at 401. A reviewing court must also ensure that the ALJ applied the proper legal standards. *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984); *Palmisano v. Saul*, Civ, A. No. 20-1628605, 2021 WL 162805 at *3 (E.D. Pa. Apr. 27, 2021).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. §423(d)(1). As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) A_t the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration

> requirement in {404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix I of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. "04.1520(4) (references to other regulations omitted).

Before going from the third to the fourth step, the Commissioner will assess a claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence in the case record. *Id*. The RFC assessment reflects the most an individual can still do, despite any limitations. SSR 96-8p.

The final two steps of the sequential evaluation then follow:

> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make the adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

*Id*.

II.     *The ALJ's Decision and the Claimant's Request for Review*

In his decision, the ALJ determined that Glenn F. suffered from the severe impairments of a left knee tear, derangement, osteoarthritis post-surgery; right elbow fracture, epicondylitis, cubital tunnel syndrome; right shoulder tear; osteoarthritis, post-surgery; left shoulder surgery; cervical degenerative disc disease; depressive disorder; anxiety disorder; PTSD; and cannabis use disorder. Record at 21. He decided, however, that no impairment or combination of impairments met or equaled a listed impairment. Record at 22-4.

The ALJ decided that Glenn F. retained the RFC to engage in a limited range of light work:

> After careful consideration of the entire record, I find that the clamant has the residual functional capacity to perform light work ... except he can frequently handle and finger with both upper extremities, can frequently push and pull and reach overhead with the left upper extremity and can occasionally push and pull and reach overhead with the right upper extremity. The claimant can frequently push or pull or operate foot controls with the left lower extremity. The clamant can frequently balance and stoop, can occasionally kneel, crouch, and crawl, can occasionally climb stairs and ramps, can occasionally climb ladders, ropes and scaffolds and can occasionally be exposed to vibrations, unprotected heights and moving mechanical parts. The claimant is able to understand and remember simple instructions, make simple work-related decisions, carry out simple instructions, and can occasionally deal with changes in a routine work setting.

Record at 24.

Relying on the testimony of a vocational expert who appeared at the hearing, the ALJ determined that Glenn F. could not return to his past relevant work, but could work in such jobs as assembler of small parts, mailroom clerk, or office helper. Record at 31-2, 33. He decided, therefore, that Glenn F. was not disabled. Record at 33.

In his Request for Review, however, Glenn F. argues that the ALJ erred in (1) failing to include in his RFC assessment some limitations imposed by consulting mental health expert, Stephanie Adam, Ph.D., even though he wrote that her findings were "convincing and persuasive"; (2) giving little weight to the opinion of his treating physician; (3) failing to limit him to sedentary work, which would have resulted in a finding of disability as of the day he turned 50; and (4) failing to include all of his credibly established limitations in the RFC assessment, and in the hypothetical questions posed to the vocational expert.

IV.     *Discussion*

    A.     *Dr. Adam*

On October 23, 2015, Glenn F. met with Stephanie Adam, Ph.D., a consulting mental health expert.  Record at 361.  Dr. Adam described Glenn F. as cooperative, with an adequate manner of relating.  Record at 362. His motor behavior was lethargic, but his appearance was otherwise normal. *Id*. Glenn F. 's affect was flat and his mood dysthymic, although his thought processes were normal. Record at 363.  He was not able to give the correct date, and his recent and remote memory skills were impaired "secondary to post-traumatic stress disorder." *Id*.  His insight and judgment were only fair.  *Id*.  Cognitively, he "appeared in the below average range." *Id*.  He could manage his own self-care, drive, handle his own money, and socialize with friends.  Record at 364.

Dr. Adam wrote: "Socialization includes spending time with his family and his girlfriend.  Family relationships are supportive."  Record at 364.  He frequently spent time at his cousin's house.  Dr. Adam diagnosed Glenn F. with PTSD, and mild cannabis abuse, with a good prognosis provided he continued with his therapy and obtained psychiatric treatment.  Record at 364.  She indicated that his PTSD and depression caused moderate limitations in the ability to understand, remember, and carry out simple job instructions, and marked limitations in the ability to do the same with complex job instructions.  Record at 366.  He had moderate limitations in interacting with the public, supervisors, and coworkers, and a marked limitation in responding appropriately to work situations and changes in routine.  Record at 367.

The ALJ wrote:

> I find the State Agency psychiatric consultant, Dr. Stephanie Adam's clinical findings both convincing and persuasive and I find her limitations are consistent with and supported by the objective clinical findings at the time of her medical evaluation. I gave some weight to Dr. Adam's opinions that the claimant['s] prognosis is good and consistent with the psychiatric treatment the claimant is receiving at Life Guidance, LLC.

Record at 31.

As Glenn F. points out, although the ALJ appeared to accept Dr. Adam's findings in full, he did not include any restriction in his RFC assessment consistent with the moderate limitations she found him to have in interacting with others. Clearly, Glenn F. has identified an inconsistency. Moreover, the ALJ was confusingly inconsistent on this issue in another part of his decision, calling Glenn F.'s limitation in his ability to interact with others "no more than moderate," and "mild" in the same paragraph. Record at 23.

Thus, the ALJ erred in providing contradictory, inconsistent, conclusions as to the extent of Glenn F. 's limitations in interacting with others. Nevertheless, remand is not necessary because the ALJ pointed to sufficient evidence from the record to support a conclusion that Glenn F. 's limitations in this regard were less than moderate. Several times, he cited Glenn F. 's representation in his function report that he attended church regularly, and "had no problems getting along with family, friends, neighbors, and others." Record at 24, 30, 31, 303 (Function Report).

As above, Dr. Adam described Glenn F. as having positive socialization with his family and girlfriend. Record at 364. Also, in December, 2015, Glenn F. told Philip Kinney, Ph.D., a mental health expert who interviewed him for his Workers' Compensation claim, that he had several male friends of his age, and spent most of his day "hanging with friends," although he

6

also described himself as irritable with others. Record at 1201. Dr. Kinney wrote: "Good relations are perceived with his parents and sister." *Id*.

The ALJ was also accurate in observing that that Glenn F. was noted in the medical records to interact well with his healthcare providers. Record at 23. As noted, Dr. Adam called him cooperative. Record at 362. Dr. Kinney wrote that he was "cooperative calm and compliant" at two meetings. Record at 1201. Coordinated Health, the office where Glenn F, obtained physical therapy between July, 2105 and November, 2016, consistently described him as a "pleasant individual." Record at, e.g., 483, 486, 489, 491, 494.

Despite the contradictory aspects of the ALJ's decision, his apparent conclusion that it was unnecessary to include in the RFC assessment a limitation regarding interactions with others was adequately supported by substantial evidence. Accordingly, remand is not necessary here, because it would not result in a different outcome. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005).

    B.    *Dr. Katz*

Amir Katz, M.D., a physiatrist, treated Glenn F. between January, 2017, and July, 2018, apparently in connection with his Worker's Compensation claim. At the end of each of Dr. Katz's monthly treatment notes, from the first to the most recent treatment in the record, dated July 11, 2018, he wrote: "Work Status: it is my opinion, within reasonable medical certainty, that he is not capable to return to work in his pre-injury occupation at this time. Due to his multiple injuries, he is not capable to return to work in any occupation at this time." Record at 1659, 1665, 1671, 1678, 1684, 1690, 1696, 1702, 1708, 1714, 1720, 1732, 1738, 1744, 1753, 1759, 1765, 1770, and 1778.

Aside from citing Dr, Katz's diagnoses, Glenn F. cites only his Work Status language as a feature of his notes that should have been incorporated by the ALJ into the RFC assessment. Request for Review at 17. He argues that this would have compelled a finding of disability. *Id*.

The ALJ, however, wrote:

> I gave little weight to [Dr. Katz's] opinion that the claimant is not capable of returning to work at both his past relevant work and other work in any occupation. His opinion is conclusory and not supported by his own examination of the claimant and contradicted by the opinion of Dr. Friedman. The treatments received by the claimant for his musculoskeletal impairments consisting [of] no more than mild invasive procedures (arthroscopy) is indicative of the milder symptoms and signs these impairments are likely to. manifest contrary to the claimant's alleged functional limitations.

Record at 30.

First, as the Commissioner points out, the issue of whether a claimant is disabled is reserved to the Commissioner. 20 C.F.R. §404.1527(d)(1). The relevant Social Security regulation specifies: "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *Id*. As the District Court for the District of Delaware articulately explained: "The Commissioner's regulations explain that medical source opinions that a claimant is 'disabled' or 'unable to work' is not a medical opinion and is not given special significance because opinions as to whether or not a claimant is disabled are reserved for the Commissioner." *Robinson v. Colvin*, 137 F. Supp.3d 630, 644 (D. Del. 2015). Thus, while the ALJ had to consider Dr. Katz's medical findings, he could have simply ignored his "Work Status" opinions.

In any event, as the ALJ pointed out, Robert Friedman, M.D., who treated Glenn F. with steroid injections at Coordinated Health, PC, released him to return to unrestricted work on November 4, 2015, with respect to his right shoulder and elbow. Record at 556. Upon examination on that day, Dr. Friedman found no abnormalities or tenderness in the right elbow,

8

with a full range of motion, and normal muscle strength and tone in the right shoulder, although with some tenderness and limitation in motion. *Id*. E. Michael Okin, M.D., who examined Glenn F. on December 22, 2015, in his Workers' Compensation claim, found "no real significant findings on examination of his right shoulder." Record at 1215. Even earlier, on May 19, 2015, Dale J. Federico, M.D., Glenn F.'s orthopedic surgeon, wrote that his right shoulder did "extremely well" post-surgery, and that he could return to light-duty work as of that date. Record at 358.

As for the left knee, Glenn F. underwent a meniscus repair and removal of loose bodies on September 9, 2015. Record at 354. The ALJ was aware of this. Record at 26. Following a post-surgery evaluation on October 21, 2015, the surgeon, Dr. Federico, wrote: "In regards to his knee, he has a full range of motion. He has no medial or lateral joint line tenderness. There is no evidence of instability. He is neurologically intact." Record at 335. In 2016, Glenn F. was diagnosed with arthritis in the left knee, although his ligaments were intact. Record at 1082-3.

The ALJ recognized that the record showed that Glenn F. consistently claimed to experience pain in his left knee. Record at 26. Dr. Sunday and his partners at Coordinated Health treated the knee in 2015 and 2016 with viscosupplementation injections, and with trigger point injections. Record at 504, 509, 515, 522, 539. However, the ALJ also noted that Dr. Sunday repeatedly found Glenn F.'s knee to have a full range of motion with no neurological abnormality. *Id*. Dr. Sunday explained to Glenn F. on August 25, 2016, that he "will not return to heavy labor." Record at 495. This, of course, is consistent with the ALJ's finding that Glenn F. was only capable of a limited range of light work.

Thus, even though Glenn F.'s case was evaluated by the ALJ under the older regulations, which gave enhanced weight to the opinions of a treating physician,[1] there is no basis for an argument that Dr. Katz's findings of disability should have been incorporated in the ALJ's RFC assessment. Further, although Glenn F. had serious orthopedic impairments (the ALJ having found that he suffered from a left knee tear, derangement, osteoarthritis post-surgery; right elbow fracture, epicondylitis, cubital tunnel syndrome; right shoulder tear; osteoarthritis, post-surgery; left shoulder surgery; and cervical degenerative disc disease), he has not demonstrated that a finding of complete disability was compelled by the expert opinion evidence.

C.   *Light v. Sedentary Work*

As above, the ALJ acknowledged that Glenn F. had a severe impairment of the left knee. However, he found that Glenn F. was capable of light work, which can involve a great deal of walking and standing. As Glenn F. points out, the Social Security regulations provide that light work requires the ability to frequently lift or carry up to ten pounds, and further instructs:

> "Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.

SSR 83-10.

Glenn F. argues that it was unreasonable for the ALJ to conclude that he could engage in the extensive walking and standing required for light work, and that the ALJ erred in failing to limit him to sedentary work. In Glenn F. 's case, this would have been significant, since a limitation to sedentary work would have resulted in a finding of disability when he turned 50. 20 C.F.R. Pt. 404, subpt. P, App. 2, 5201.12.

---

[1].   Applications filed prior to March 27, 2017, are evaluated under 20 C,F.R. 5404.1527.

10

Substantial evidence, however, supports the ALJ's decision that Glenn F. 's left knee did not preclude him from engaging in light work. As above, Dr. Sunday only opined that it precluded his past, heavy, work. Further, Crescenzo Calise, M.D., an agency physician, reviewed Glenn F. 's treatment records and opined on January 15, 2017, that he could stand for six hours and sit for six hours in an eight-hour workday. Record at 35.

Similarly, Dr. Okin found that Glenn F. could sit for four hours in an eight-hour workday, and stand for four hours, if he also had the opportunity to sit at times. Record 1216. Interestingly, Dr. Okin's assessment was dated December 22, 2015, three and a half months after Glenn F.'s meniscus surgery, when he was still "recuperating" and had not yet reached "maximum medical improvement regarding his left knee." Record at 1214.

The record does not include a more restrictive assessment of Glenn F.'s ability to stand or walk. Glenn F. points to Dr. Katz's treatment notes, but, although Dr. Katz found tenderness and a lack of full mobility in Glenn F.'s left knee, and stated generally that he was unable to work, he never set forth specific limitations on work-related functions such as standing or walking. In these circumstances, there is no basis for disturbing the ALJ's conclusion that Glenn F. could engage in light work.

D. *The Hypothetical Questions Posed to the Vocational Expert*

At Glenn F.'s hearing, the ALJ asked the vocational expert whether work existed for an individual with the limitations as set forth in his RFC assessment, except with the ability to push, pull, and reach overhead frequently with both upper extremities. Record at 71-2. Then he asked a second hypothetical question, changing it so that the individual could push, pull, and reach overhead only occasionally with the right arm (as he ultimately found in his RFC

11

assessment).  Record at 72-3.  In response to both of these questions, the vocational expert was able to suggest possible jobs.  *Id*. at 72-3.

Thirdly, the ALJ posed a hypothetical question where the individual retained the abilities in the second question, but with the additional limitation that he would be off-task more than 10% of the workday and absent from work two or more days per month.  Record at 73. The vocational expert opined that such an individual would not be employable.  *Id*.

Glenn F.'s final claim is that the ALJ erred in failing to include all of his proven limitations in the hypothetical questions he posed to the vocational expert who appeared at the hearing.  He refers to "limitations assessed" by Drs. Adam, Kinney, Katz, and Sunday.  Response at 26.

Glenn F. has not, however, pointed to any specific limitation imposed by any of these doctors which he believes should have been included.  And, as above, he has not succeeded in showing in his prior claims the existence of limitations which the ALJ wrongly failed to include in his RFC assessment.  Accordingly, it is impossible to conclude that Glenn F. has demonstrated a fault in the hypotheticals posed to the vocational expert by the ALJ.

V.       *Conclusion*

In accordance with the above discussion, I conclude that the Plaintiff's Request for Review should be DENIED, and judgment entered in favor of the Commissioner.


BY THE COURT:


*/s/ Scott W. Reid*

_____
SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE